Fradus Lee ANDERSON,
Plaintiff-Appellant,

v.

UNIVERSITY OF WISCONSIN, et al.,
Defendants-Appellees.

No. 87–2335.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1988.

Decided March 7, 1988.

Robert J. Gingras, Fox, Fox, Schaefer & Gingras, S.C., Madison, Wis., for plaintiff-appellant.

Robert D. Repasky, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.

Before POSNER, EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

The University of Wisconsin Law School at Madison admitted Fradus Lee Anderson to the class entering in August 1979. He completed the semester with an average of 75, below the 77 required by the Law School. He was not permitted to complete the second semester of the 1979–80 year because he had not furnished the Law School with the necessary certification of his undergraduate degree. The Law School allowed him to return for the spring semester in 1981, despite his poor average and the knowledge that he is an alcoholic. Sensing that he was doing poorly Anderson asked to withdraw. The request was granted, but not before he received a D in legal writing and, while drunk, harassed and threatened his legal writing partner. The Law School admitted Anderson for a third time in the spring semester of 1982. He completed this semester with a cumulative average of 76.92. The Law School informed Anderson that he would not be allowed to continue.

The district court recounts Anderson's saga in trying to be readmitted for a fourth try. 665 F.Supp. 1372 (W.D.Wis.1987). The Law School generally readmits students whose failure stems from a problem that has been overcome. Anderson attributed his failure to drink and contended that he was recovering. The Retentions Com-

mittee thrice concluded that Anderson had not conquered his drinking problem, the third time after receiving live testimony from four of Anderson's supporters, including a counselor at his clinic. The Retentions Committee learned that Anderson generally abstained but still drank on occasions. It concluded both that Anderson was not prepared for a pressure-filled curriculum and that he could not complete the program within the five years ordinarily allowed.

The Petitions Committee of the Law School then reexamined the subject, holding a de novo inquiry in response to Anderson's grievance against the Retentions Committee. The Petitions Committee considered not only Anderson's grades and drinking but also his performance at the Business School. Anderson had received an "A/B" grade in "Legal Aspects of Business Administration", an undergraduate-level course duplicating materials Anderson covered in law school; the other grades were B/C, C, and D (which Anderson had reported as a C). The Business School said that it would not consider this performance sufficient for admission to its graduate program. The Petitions Committee concluded that the record did not augur satisfactory completion of the Law School program and declined to readmit Anderson. The Vice Chancellor for Academic Affairs of the University, after still another inquiry, affirmed this decision. Anderson then filed this suit against the University, its Chancellor and Vice Chancellor, the Law School, and the members of the two committees (collectively the University). He argued that the University violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against him on account of alcoholism, and also violated the Equal Protection Clause by discriminating on account of his race (he is black). The district court granted summary judgment to the University.

■ None of the evidence in this record hints that the University held Anderson's race against him. The Law School admitted Anderson under a program permitting minority students to enroll although they

do not meet the ordinary criteria; it then twice readmitted Anderson despite his poor performance and drinking problem. Only after he had failed for a third time did the Law School draw the line; even then the Law School permitted Anderson to take a course in the summer session, and the Business School permitted Anderson to take several courses. Although, as Anderson observed, most of the students (of any race) readmitted by the Retentions Committee had averages lower than 76.92, this is an artifact of the cutoff at 77.00; the range 76.93 to 76.99 does not contain many students. Anderson does not contend that any student, of any race, has been readmitted unless the Law School thought that the source of the academic difficulties had been overcome; that other students were readmitted therefore is not a basis of an inference of discrimination. More, the median grade point average of readmitted black students was 76.23, and the median of readmitted white students was 77.53. 665 F.Supp. at 1390. This demonstrates the absence of systemic discrimination against blacks; white students needed higher averages than black students did to elicit a favorable decision from the Retentions Committee.

■ On the Rehabilitation Act aspect of the case, the University does not dispute Anderson's contention that an alcoholic is a "handicapped individual" within the meaning of the Rehabilitation Act; we therefore assume that he is. Cf. *School Board of Nassau County v. Arline*, —— U.S. ——, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Anderson does not contend that the Act requires the University to alter its standards or procedures to accommodate his alcoholism; we therefore assume that it need not.

Section 504 provides that an institution receiving federal funds may not discriminate against an "otherwise qualified handicapped individual". See also 45 C.F.R. § 84.3(k)(3). The district court ruled in favor of the University because, it believed, Anderson is not "otherwise qualified" to continue as a law student. His average was below 77; the Law School requires an average of 77; that is that. 665 F.Supp. at 1391–92. See *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Anderson replies that but for his drinking he could achieve an average of 77, but this misses the point. *Davis* held that a deaf person need not be allowed to work as a nurse. But for her handicap, Davis could hear. That was unimportant; the Court held that the right inquiry is whether the person can satisfy the program's requirements despite his handicap. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Davis*, 442 U.S. at 406, 99 S.Ct. at 2367. The Rehabilitation Act forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap. The Act replaces "reflexive reactions . . . with actions based on reasoned and medically sound judgments". *Arline*, 107 S.Ct. at 1129.

Although inability to perform at the required standard as a result of a handicap makes a person not "otherwise qualified", a court still must decide what that standard is. The meaning of a standard lies in the method of its application. A student who cannot maintain an average of 77 at the Law School is not qualified to remain as a student, *unless* the student shows that the source of the academic problem has been abated, making future work of satisfactory quality likely. The bright line at 77 is diffracted by the Retentions Committee. Its decisions are part of the whole standard the Law School uses. The University wants us to disregard the "unless" clause —to treat the standard of qualification as if there were no Retentions Committee. The exceptions are part of the rule, however, and a university could not say to handicapped persons "None may apply to the Retentions Committee" or "We apply only the basic rules, and not the exceptions, to you." We therefore disagree with the district court's approach to the case.

■ This does not affect the outcome, however, because no rational jury could return a verdict for Anderson on this

record, and the grant of summary judgment therefore was proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). Nothing in the record suggests that the University's decision was based on stereotypes about alcoholism as opposed to honest judgments about how Anderson had performed in fact and could be expected to perform. The Law School allowed Anderson to reenter the program twice, knowing that he is an alcoholic; the Business School also allowed Anderson to take courses. In none of his four stints at the University did Anderson perform up to standard.[1] During spring 1981 he harassed and threatened another student. He did not abstain from alcohol during any substantial portion of the period covered by the record. Although there is a dispute about how serious his drinking remains—the University characterizes Anderson as a person with "fits of sobriety", while Anderson prefers the characterization of a person generally successful at abstaining with periods of inconsequential backsliding—it is undisputed that Anderson sometimes still drinks. His performance at the Business School during a period when he insists he was free from drink does not give confidence that he could succeed at the Law School.

■ Anderson believes that a jury should evaluate the evidence and determine whether, as his counselor told the Retentions Committee, he had recovered enough to take the stress. There is a dispute about how Anderson would fare if placed back in the classroom, but this is not a "material" issue. The Act does not designate a jury, rather than the faculty of the Law School, as the body to decide whether a would-be student is up to snuff. The Law School may set standards for itself, and jurors unacquainted with the academic program of a law school could not make the readmissions decision more accurately than the faculty of the Law School; the process of litigation would change the substantive standard in addition to raising the costs of its application. The Supreme Court has repeatedly admonished courts to respect the academic judgment of university faculties. *University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).

■ The question is not whether a court believes that Anderson could handle the work. It is whether the University discriminated against him because of his handicap—that is, excluded him even though it would have readmitted a student whose academic performance and prospects were as poor but whose difficulties did not stem from a "handicap".[2] Just as Title VII of the Civil Rights Act of 1964 ensures only equal treatment and not "correct" decisions, *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987), so the Rehabilitation Act requires only a stereotype-free assessment of the person's abilities and prospects rather than a correct decision. Cf. *Namenwirth v. University of Wisconsin*, 769 F.2d 1235, 1242–43 (7th Cir.1985)

---

1. Anderson insists that the Petitions Committee's reference to his performance in the Business School—and its conclusion that this record shows that Anderson could not succeed in the Law School—is a "pretext for discrimination". The Retentions Committee rejected his application without reference to these grades, so Anderson insists that the University must defend the case solely on the record before the Retentions Committee. But Anderson himself asked for de novo review by the Petitions Committee and presented his (version of his) record in the Business School as support for his petition. It does not display bias for a committee to evaluate the evidence presented, and there is no right not to suffer by evidence you present.

2. Anderson contends that the University placed him in an impossible position by first deferring a decision to give him more time to overcome his drinking problem, and then when (he says) he had solved it telling him that it was too late to complete the academic program within the time allotted by the Law School's regulations. Yet there is no evidence that the University treats differently failing students with other problems. If the Law School would have handled a student distracted by marital difficulties first by requiring the student to take time off and then by saying that too much time had passed, Anderson has no complaint even if the University should not put students in this pickle, even if in a given case the University is mistaken in thinking that "too much" time had passed.

(Title VII does not authorize de novo review of tenure decisions). Not a shred of evidence in the record suggests that the University held a stereotypical view of alcoholism. The committees and the Vice Chancellor looked, hard, at what Anderson had done and could do. If they erred in their appreciation of these things, the error does not violate the Rehabilitation Act.

Anderson argues in passing that his treatment violated the Equal Protection Clause because there is a constitutional rule against making decisions on the basis of handicap. There is no such rule; certainly *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), did not create one. Law schools may consider academic prospects and sobriety when deciding whether an applicant is entitled to a scarce opportunity for education. At all events, the University acted on the basis of Anderson's performance rather than his condition. Cf. *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1245 (1968).

AFFIRMED.