**Winford FEAGIN, Plaintiff,**

v.

**G. Michael BROGLIN, et al.,**
**Defendants.**

No. S86–239.

United States District Court,
N.D. Indiana,
South Bend Division.

June 1, 1988.

Norman R. Buls, Portage, Ind., for plaintiff.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

### MEMORANDUM AND ORDER

MILLER, District Judge.

On February 2, 1988, the court addressed plaintiff Winford Feagin's various claims against defendant G. Michael Broglin, superintendent of the Westville Correctional Center where Mr. Feagin is an inmate. The court granted summary judgment to Supt. Broglin on most of the claims, but granted summary judgment to Mr. Feagin on his claim that he was denied the right to call witnesses at his prison disciplinary hearing. The court reserved for trial the issues of damages; the case was set for trial commencing May 16, 1988.

On April 22, Supt. Broglin moved for reconsideration of the February 2 order, setting forth three reasons for entry of judgment in his behalf: (1) that the doctrine of qualified immunity shields him from damages; (2) that the facts before the court do not establish his personal involvement in any deprivation of Mr. Feagin's

rights; and (3) the facts before the court do not establish that Mr. Feagin's rights were violated. It was necessary to continue the trial to allow time for Mr. Feagin to respond. For the reasons that follow, the court concludes that the judgment in Mr. Feagin's favor must be vacated, but that summary judgment for Supt. Broglin would be inappropriate.

### I. Facts

The facts surrounding Mr. Feagin's claims are set forth fully in the February 2, 1988 memorandum. The facts pertinent to the motion to reconsider can be summarized quite briefly. Mr. Feagin was charged with a disciplinary violation. Officer Donald Fine "screened" Mr. Feagin on that charge; on the notice of hearing, Officer Fine noted two witnesses whom Mr. Feagin asked to call. Mr. Feagin contends that he requested nineteen other witnesses, but Officer Fine refused to so note on the form. Mr. Feagin contends he renewed his request for those witnesses at the disciplinary hearing; the defendants' affidavits dispute that Mr. Feagin made such a request.

The disciplinary board found against Mr. Feagin and he appealed to Supt. Broglin. The disallowance of witnesses was among the issues Mr. Feagin submitted to Supt. Broglin. The superintendent referred the appeal for investigation to Officer Ayres, and ultimately affirmed the disciplinary board's finding.

### II. Issues

As noted above, Supt. Broglin makes three arguments in support of his motion for reconsideration. The court addresses each in turn.

#### A. Qualified Immunity

Supt. Broglin opens his argument on the qualified immunity issue by stating accurately that, "The Court's Memorandum and Order does not discuss qualified immunity." (Memorandum in Support of Reconsideration, at 2). This implied oversight is easily explained by recognition that neither Supt. Broglin's five-page memorandum in

support of his summary judgment motion filed on April 13, 1987, nor his two-page supplement filed November 2, 1987, made any reference to the qualified immunity defense. Further, although the issue was raised in the answer to the complaint, the proposed pretrial order tendered before the summary judgment ruling made no mention of the defense. The defendants' trial brief, filed September 29, 1987, similarly was silent as to qualified immunity. Under such circumstances, it would have been remarkable had the February 2 memorandum discussed qualified immunity.

Supt. Broglin contends that he has pressed the issue impliedly by claiming repeatedly "that there has never been any clearly established legal principle to the effect that a prison superintendent may be held monetarily liable for failing to correct a procedural mistake by a subordinate during an institutional proceeding concerning inmate misconduct". (Memorandum in Support of Reconsideration, at 4). He argues further that the February 2 memorandum "fails to cite a single case where a prison superintendent has been held monetarily liable in similar circumstances", (Memorandum in Support of Reconsideration, at 12), and the pre-July, 1985 caselaw would not have informed a prison superintendent of the potential for such liability.

This argument, if taken at face value, is tautological: because no prison superintendent has been found liable for denial of witnesses during a prison disciplinary proceeding, all prison superintendents are entitled to qualified immunity; because all prison superintendents are entitled to qualified immunity, no prison superintendent ever will be found liable for denial of witnesses during a prison disciplinary proceeding.

This is not the test for qualified immunity. The Seventh Circuit recently explained the qualified immunity defense as follows:

Under this doctrine, government officials are shielded from liability for civil damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The principle behind the doctrine is that "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* The Supreme Court has stated that this inquiry is a question of law, *see Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and that the determination should generally be made at the outset of a case to avoid unnecessary litigation.

*Greenberg v. Kmetko,* 840 F.2d 467, 472 (7th Cir.1988). Thus the inquiry is not whether other similarly situated officials have been held liable, but whether the allegedly infringed right was clearly established. The inquiry focuses upon the right involved and upon the particular circumstances alleged to have given rise to its violation. A plaintiff cannot plead around the qualified immunity defense by a broad statement of the right:

... our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The court must determine whether the law was clear with respect to the specific facts that confronted the public official at the time of his action. *Green v. Carlson,* 826 F.2d 647, 649 (7th Cir.1987); *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987).

■ The parties agree that *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), is the starting point in determining whether Supt. Broglin's al-

leged actions violated clearly established rights. In *Wolff*, the Court held that an inmate facing prison disciplinary charges "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals". 418 U.S. at 566, 94 S.Ct. at 2979. The *Wolff* Court afforded prison officials "necessary discretion" concerning requests for witnesses. *Id.* In *Ponte v. Real*, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Court held that prison officials must have a reason for denying a request for witnesses, and may state the reason either when the request is denied or "later", presumably at or prior to trial on a claim under 42 U.S.C. § 1983.

*Wolff* and *Ponte* clearly establish a right not to be denied the opportunity to call witnesses without a reason. Supt. Broglin does not appear to challenge the existence of such a right; he seems to argue instead that the law is such that he could not be deemed to have violated that right. Only those who deprive an inmate of a right can be liable for that deprivation, he argues: with respect to the opportunity to call witnesses, the right is infringed, if at all, at the time of the disciplinary hearing, in which he is not involved.[1]

This position ignores IND. CODE 35–50–6–5.5 and Adult Authority Disciplinary Policy Procedures §§ 26(A) and (B), which entitle inmates to Supt. Broglin's review of disciplinary board determinations. Supt. Broglin argues that nothing in those sections requires greater procedural protections than accorded by *Wolff* and its progeny. (Defendant's Memorandum in Support of Reconsideration, at 15 n. 4). To the extent Supt. Broglin means that those sections create no liberty interest in such a review, the court disagrees for the reasons set forth in the February 2 memorandum. To the extent Supt. Broglin means that those sections do not enlarge the right to call witnesses, the court agrees. Those sections, nonetheless, potentially place Supt. Broglin among those who may bear

responsibility for infringement of the right established by *Wolff*. *See Smith v. Stoner*, 594 F.Supp. 1091 (N.D.Ind.1984).

In his appeal to Supt. Broglin, Mr. Feagin claimed that he had been allowed to call only two of his requested twenty-one witnesses. In light of *Wolff* and *Ponte*, Supt. Broglin reasonably should have known that Mr. Feagin had a clearly established right not to be denied those witnesses without a reason. In light of IND. CODE 35–50–6–5.5, the Adult Authority Disciplinary Policy Procedures, and *Smith v. Stoner*, he should have known that his conduct, too, might violate that clearly established right.

Supt. Broglin is not entitled to qualified immunity on this claim.

### B.  Personal Involvement

Supt. Broglin contends that the judgment against him must be vacated because he was not shown to have been personally involved in any constitutional deprivation. The court agrees. In the February 2 memorandum, the court stated briefly, "The court has determined that Mr. Feagin's constitutional rights were violated when his request for witnesses was denied. Supt. Broglin must be held to have participated in that violation by virtue of his affirmance of the disciplinary findings despite Mr. Feagin's having called Supt. Broglin's attention to the deprivation of witnesses." Order and Memorandum, at 31–32.

Supt. Broglin correctly argues that the court's ruling creates something akin to absolute liability on the superintendent's part for any earlier error of constitutional magnitude. Mr. Feagin seems not to see much wrong with such a result. The facts now of record do not warrant a finding of personal involvement, however.

The court is not prepared to hold that a prison superintendent is strictly liable for all constitutional errors by disciplinary boards, or that negligence in the review of a disciplinary action is sufficient to render a prison administrator personally

---

**1.** This argument anticipates the discussion that follows concerning Supt. Broglin's personal involvement, but *Anderson v. Creighton*, 107 S.Ct. 3034, requires that it be addressed with respect to the qualified immunity claim, as well.

liable under 42 U.S.C. § 1983 for the constitutional errors of others. The law does not justify such a holding. *See generally Rascon v. Hardiman,* 803 F.2d 269 (7th Cir. 1986). The facts of this case are unique: upon receipt of Mr. Feagin's appeal, Supt. Broglin directed another to investigate his allegations. While an administrator cannot avoid his personal responsibility by delegating it to another, the delegation and information received in response must be weighed in determining whether the administrator acted with reckless disregard of constitutional rights.

█ The record before the court establishes, without dispute, that Supt. Broglin was made aware of Mr. Feagin's claim that he was denied the opportunity to call witnesses, that Supt. Broglin triggered an investigation of Mr. Feagin's claims, and that if Mr. Feagin was denied his rights under *Wolff* and *Ponte,* Supt. Broglin cemented that denial by affirming the disciplinary board's finding. The record contains no facts from which the court can determine whether, in light of the investigation and matters reported, Supt. Broglin acted reasonably, acted negligently, or acted in reckless disregard of Mr. Feagin's rights. Accordingly, summary judgment is inappropriate.

At the most recent hearing, Mr. Feagin's counsel expressed his recollection of an agreement between counsel that the court should determine the claims against Mr. Broglin as a matter of law on summary judgment motions. The court's recollection is consistent with that of Mr. Feagin's counsel. At that most recent hearing, counsel for Supt. Broglin seemed to say that he favored summary disposition because Supt. Broglin would prevail; a more charitable explanation of Supt. Broglin's position would be that he felt that the law was such that no factual disputes were material.

In any event, the court cannot find that the parties agreed that the court should receive and weigh the evidence on the claims against Supt. Broglin pursuant to Fed.R.Civ.P. 43(e). *See Stewart v. RCA Corp.,* 790 F.2d 624 (7th Cir.1986). There-

fore, the court must apply the traditional rules governing summary judgment motions: to be entitled to summary judgment, Mr. Feagin would have to demonstrate that no genuine issue of fact exists for trial. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 841 F.2d 1347 (7th Cir.1988). Based on the record before the court, Mr. Feagin cannot be said to have met that burden.

## C. Violation of Mr. Feagin's Rights

Finally, Supt. Broglin argues that the court erred in finding that Mr. Feagin's limited right to call witnesses was violated. The court agrees, although not for all of the reasons pressed by Supt. Broglin.

█ Supt. Broglin argues that the right to call witnesses is one that attaches at the hearing, and not before. Therefore, assuming Officer Fine refused to list Mr. Feagin's additional witnesses at the time of the screening, Mr. Feagin suffered no constitutional injury; his *Wolff* right could have been violated only if the disciplinary board refused his request for witnesses without reason at the hearing, and the parties dispute whether Mr. Feagin made such a request. The court cannot agree.

Mr. Feagin contends that Officer Fine required him to execute the screening form showing fewer requested witnesses than he desired. Mr. Feagin's failure to "request" witnesses in the proper procedural manner on the screening form could have been deemed grounds for refusing his request. *See Redding v. Fairman,* 717 F.2d 1105 (7th Cir.1983), *cert. denied* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). The court does not read *Ponte v. Real* as vesting inmates with a right to call witnesses not mentioned until the disciplinary hearing.

█ The court concludes, however, that its February decision improperly attributed conclusive weight to Mr. Feagin's affidavit that he requested twenty-one witnesses of Officer Fine. Supt. Broglin has been unable to contradict Mr. Feagin's assertion, because Officer Fine cannot be found. Generally, however, summary judgment is inappropriate when resolution of a factual

issue depends upon credibility of witnesses. See generally 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2726 (1983). The court must assume that Mr. Feagin is a prison inmate due to a criminal conviction that would be admissible for impeachment purposes. Fed.R.Evid. 609. Remaining evidence before the court is ambiguous: that the screening form does not list additional witnesses supports an inference that Officer Fine refused to write those names, as Mr. Feagin contends, but it also supports an inference that Mr. Feagin only two witnesses. When considering a summary judgment motion, the court must draw any permissible reasonable inferences from the materials before it in favor of the non-moving party. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Davis v. City of Chicago*, 841 F.2d 186 (7th Cir.1988).

In sum, in light of the availability of evidence to impeach Mr. Feagin's credibility and the conflicting inferences permissibly to be drawn from the screening form, the court cannot say that no reasonable jury could return a verdict for Supt. Broglin; accordingly, summary judgment for Mr. Feagin is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. University of Wisconsin*, 841 F.2d 737 (7th Cir.1988).

### III. Conclusion

For the foregoing reasons, the court GRANTS IN PART the defendant's motion for reconsideration. The order of February 2, 1988 is modified to deny both parties' motions for summary judgment with respect to the plaintiff's claim that his constitutional rights were violated by denial of his request for witnesses. The February 2, 1988 order remains unchanged as to all other matters.

SO ORDERED.