65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gregory C. MALLETT, Plaintiff-Appellant,
v.
MARQUETTE UNIVERSITY, et al., Defendants-Appellees.
 No. 94-3246.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 24, 1995.*
Decided Aug. 25, 1995.
 
 Before BAUER, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Gregory Mallett brought this action against Marquette University, claiming that the university and its officials discriminated against him on the basis of his disability when they denied him admission to the law school. The district court granted the university's motion for summary judgment. On appeal, Mallett renews his contentions that Marquette has admitted students in the past with lower grade point averages (GPAs) than his, and that Marquette improperly relied upon his performance on the Law School Admissions Test (LSAT), which discriminates against disabled persons. We affirm.
 
 BACKGROUND
 
 2
 In June 1989, Mallett took the LSAT under "nonstandard test conditions in order to accommodate a particular disability," and earned a score that placed him in the bottom one to two percent of those taking the test nationwide.[1] In May 1991, after receiving his undergraduate degree from the University of Wisconsin-Milwaukee with a cumulative GPA of 2.05, Mallett reapplied for admission to the law school for the fall of 1992. He again was turned down. In its 1992 entering class, the law school did not admit any of fifty-seven applicants with a GPA below 2.5 and an LSAT score in the bottom fiftieth percentile.
 
 
 3
 In August 1992, Mallett filed his complaint pro se, alleging that Marquette University denied him admission to law school "solely on the basis of his handicap (i.e., back, upper extremity, and learning impairments)" in violation of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. Defendants moved for summary judgment, which the district court granted. The judgment was upheld on Mallett's Rule 59(e) motion.
 
 DISCUSSION
 
 4
 We will affirm the district court's grant of summary judgment if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 5
 Section 504 of the Rehabilitation Act provides that an institution receiving federal funds may not discriminate against an "otherwise qualified individual with a disability." 29 U.S.C. Sec. 794.[2] An "otherwise qualified" individual is one who, in spite of his or her disability, is able to meet all of the academic and technical requirements of the relevant program. See Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979); Anderson v. University of Wisconsin, 841 F.2d 737, 740 (7th Cir.1988). The Act "forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap." Anderson, 841 F.2d at 740. It is undisputed that Mallett is disabled and that the law school receives federal funding. The question here is whether Mallett is an "otherwise qualified individual" who has been denied admission to the Marquette University Law School solely because of his disability.
 
 
 6
 Mallett argues that because Marquette has accepted students with GPAs lower than his in the past, he has satisfied his initial burden of proof of showing that he was "at least as well qualified as one other nonhandicapped applicant who was accepted." We disagree. A candidate's GPA is only one indicator used by law schools to assess future academic performance. By focusing on the issue of his GPA, Mallett disregards other factors that a law school considers when making an admissions decision--such as a candidate's score on the LSAT. Mallett has not presented any evidence, for instance, about the LSAT scores of those students who were admitted to the law school with GPAs lower than his. Mallett's GPA and LSAT score were both well below the averages of persons admitted into the 1992 entering class. Marquette University Law School in fact has never admitted an applicant who scored as low on the LSAT as Mallett.
 
 
 7
 Mallett also argues that the LSAT has a "disproportionate" and "adverse" effect on disabled persons. In support, he cites to a form letter which the Law School Admission Services furnishes to law schools along with the LSAT score of a disabled applicant. The letter cautions that "the degree of comparability of [LSAT] scores [earned under nonstandard testing conditions] with those from standard administrations cannot be determined," and advises that "scores earned under nonstandard conditions ... be interpreted with great sensitivity and flexibility." (R. 17 at Ex. 22.) The letter goes on to "urge[ ]" law schools to consider each disabled applicant individually, and "to evaluate prior academic achievement and recommendations with added importance." Mallett asserts that it was "illegal" for the school to "rely" upon "invalidated predictors such as a nonstandard administered LSAT score," and that such reliance departed from "accepted academic norms."
 
 
 8
 The regulations interpreting Sec. 504 prohibit the use by educational institutions of any tests which have a disproportionate, adverse effect on handicapped persons unless the test has been validated as a predictor of success in the education program and alternate tests that have less disproportionate, adverse effects are not shown by the Secretary to be available. 34 C.F.R. Sec. 104.42(b)(2). Mallett offers no evidence, however, to show that the LSAT has a disproportionate and adverse effect on handicapped persons; to the contrary, the test is available in special formats for the disabled, including additional testing time, depending upon the applicant's particular disability.
 
 
 9
 Moreover, it is plain that Marquette used the LSAT in its admissions process only in addition to other criteria. According to the Marquette Law School Admissions Handbook, which Mallet attached as an exhibit to his memorandum in opposition to defendant's summary judgment motion, "[f]or those who take the LSAT under nonstandard conditions, the Admissions Committee considers the score as part of the record, but gives the entire file careful attention because the committee is aware that the scores so attained may not be wholly comparable to other scores." The Handbook adds that "[t]he Law School's general policy favoring diversity in the student body may mean that the life experiences and backgrounds of some handicapped applicants are viewed by the Admissions Committee as positive factors in the admissions decision."
 
 
 10
 We agree with the district court's finding that there is "absolutely no evidence" that Marquette's admissions officers deviated in any way from their stated policy for considering applications from disabled candidates. As measured by his GPA and LSAT score, Mallett's academic standing falls far below Marquette's standards for admission. Furthermore, we accord the Marquette University Law School significant discretion in establishing its admission standards and evaluating the academic credentials of applicants. See Regents of University of Michigan v. Ewing, 474 U.S. 214, 225 (1985) (courts show great deference to the judgments of educators and normally will not overturn such decisions unless they are such "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment"); Davis, 442 U.S. at 413 (educational institutions need not lower or substantially change their standards to accommodate a disabled person); Anderson, 841 F.2d at 741 ("The [Rehabilitation] Act [of 1973] does not designate a jury, rather than the faculty of the Law School, as the body to decide whether a would-be student is up to snuff.").
 
 
 11
 We conclude that Mallett is not "otherwise qualified" for admission under the academic standards used by the Marquette University Law School. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Mallet applied for admission to the Marquette University Law School for the fall semester of 1990, and was rejected. In its 1990 entering class, Marquette University Law School admitted only one of eighteen applicants with no undergraduate grade point average and an LSAT score in the bottom fiftieth percentile. Mallett does not challenge the circumstances surrounding the 1990 denial of admission in this proceeding
 
 
 [2]
 29 U.S.C. Sec. 794(a) provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."