In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3266

P.F., a minor, by A.F.,
his parent, et al.,

*Plaintiffs-Appellants*

*v.*

CAROLYN STANFORD TAYLOR,[*]
State Superintendent of Public
Instruction, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cv-792 — **William M. Conley**, *Judge*.

ARGUED APRIL 20, 2018 — DECIDED JANUARY 22, 2019

Before SYKES and BARRETT, *Circuit Judges*, and DURKIN,
*District Judge*.[†]

---

[*] We have substituted Carolyn Stanford Taylor, the current State Superintendent of Public Instruction, for Tony Evers, the prior Superintendent.

[†] Of the Northern District of Illinois, sitting by designation.

SYKES, *Circuit Judge*. Under Wisconsin's open-enrollment program, a public-school student can apply to transfer from his resident school district to a nonresident district that has an available space for him. WIS. STAT. § 118.51. The program distinguishes between "regular education and special education spaces." *Id.* § 118.51(5)(a)1. If a student with a disability requires special services, a nonresident district may deny the student's transfer application if it lacks the services or space necessary to meet those special needs. *Id.* § 118.51(5)(a)4.

This suit concerns a group of disabled schoolchildren whose transfer applications were denied because nonresident districts determined that they could not meet the students' special needs. The students' parents, on their children's behalf, sued the school districts and various state actors seeking injunctive, declaratory, and compensatory relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); and the Equal Protection Clause, U.S. CONST. amend. XIV, § 1. They argued that the program unlawfully discriminates against disabled children because of their disabilities. The district judge concluded that the program did not violate federal law and entered summary judgment for the defendants.

We affirm. Differential treatment of special-needs students doesn't make the program unlawful. Federal law "forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap." *Anderson v. Univ. of Wis.*, 841 F.2d 737, 740 (7th Cir. 1988). The program makes decisions based on the actual needs of disabled students, so it complies with federal law. And even if we analyze the case

as a request for an accommodation, the requested change would fundamentally alter the program, and neither the ADA nor the Rehabilitation Act require fundamental alterations.

## I. Background

In keeping with the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, 1412(a)(1), Wisconsin law guarantees children with disabilities a "free appropriate public education" and requires school districts to provide special-education services according to a disabled child's "individualized education program." WIS. STAT. §§ 115.76(7), 115.77(1m)(d). An individualized education program ("IEP") outlines the "special education and related services" or "program modifications or supports" that the disabled student requires. *Id.* § 115.787(2)(c). Typically the school district in which a special-needs student resides must satisfy the IEP requirements unless the student transfers districts. *Id.* §§ 115.76(10), 115.77.

Wisconsin's open-enrollment program permits such a transfer. *Id.* § 118.51(2). The program operates on a calendar. In January school districts determine how many excess "spaces" are available in both regular-education classrooms and special-education services. *Id.* § 118.51(5)(a)1. They can consider factors like "class size limits, pupil-teacher ratios[,] or enrollment projections." *Id.* § 118.51(5)(a)1, (5)(a)4. Regular-education spaces are typically determined by grade level, *id.* § 118.51(5)(a)1, while "special education spaces" are determined "by program or services," WIS. ADMIN. CODE PI § 36.06(5)(a).

Between February and April, interested students may submit transfer applications to up to three nonresident districts. WIS. STAT. § 118.51(3)(a)1. If an applicant has an IEP in place, the resident district will send a copy of the plan to the nonresident district. *Id.* § 118.51(3)(a)1m. Beginning in May nonresident districts determine which applications they will accept by comparing available space to the needs of the applicants. *Id.* § 118.51(3)(a)2. For applicants with IEPs, nonresident districts determine whether they have the capacity to meet each student's special needs. Relevant factors for this analysis include

> [w]hether the special education or related services described in the child's individualized education program under [WIS. STAT.] § 115.787(2) are available in the nonresident school district or whether there is space available to provide the special education or related services identified in the child's individualized education program, including any class size limits, pupil-teacher ratios[,] or enrollment projections established by the nonresident school board.

*Id.* § 118.51(5)(a)4.

Districts notify applicants of their acceptance or rejection in June. *Id.* § 118.51(3)(a)3. Most applications are accepted, including those submitted by students with IEPs. In 2013–2014, districts approved 3,718 out of 5,822 transfer applications for students with IEPs, or roughly 64%. The same year districts approved 71% of transfer applications for students without IEPs.

The Wisconsin Department of Public Instruction administers the program at the state level. It promulgates the standard application forms, which include a checkbox for whether the student has an IEP. The Department's guidance emphasizes that "[a] student may not be denied open enrollment based on the student's disability." MARY JO CLEAVER, WIS. DEP'T OF PUB. INSTRUCTION, MAKING OPEN ENROLLMENT SPECIAL EDUCATION DECISIONS NONRESIDENT SCHOOL DISTRICT 2 (2012). Rather, "[t]he application may only be denied based on the availability of or space in the special education or related services required in the student's IEP." *Id.* Individual school districts administer the program at the local level. They calculate capacity and determine whether there is an available space for a given applicant. The Department has the power to review and overturn these determinations.

The three plaintiffs—R.W., P.F., and S.B.—each applied to transfer to nonresident school districts under the open-enrollment program. R.W. and P.F. have autism while S.B. has ADHD. R.W. and his twin brother applied to transfer from the Kenosha Unified School District to the Paris J1 School District in 2012. Paris initially accepted both applications but later revoked its acceptance of R.W.'s application because it lacked the capacity to meet his special needs.

P.F. applied to transfer from the Racine School District to the Muskego–Norway School District in 2014. Muskego–Norway had previously determined that it had 55 spaces for regular students but zero spaces for special-needs students. Moreover, under the law in effect at the time, Racine would be responsible for reimbursing Muskego–Norway for the additional costs required to educate P.F. in accordance with

his IEP. So Racine declined to approve the transfer, and Muskego–Norway ultimately denied P.F.'s application.

S.B. applied to transfer from the Milwaukee School District to the Shorewood School District in 2014. His application was initially accepted. But when Shorewood later discovered that S.B. had an IEP, it promptly revoked his acceptance under section 118.51(5)(a)4 and expelled him from the school.

The three students, by their parents, filed suit against the State Superintendent of Public Instruction, the Wisconsin Department of Public Instruction, and the three school districts that rejected their applications: Paris J1, Muskego–Norway, and Shorewood.[1] The plaintiffs claimed that the program violates the ADA, the Rehabilitation Act, and the Equal Protection Clause. The parties filed cross-motions for summary judgment, and the district judge entered summary judgment for the defendants on all claims except for R.W.'s claim for injunctive relief against Paris. That claim was later dismissed, and the judge entered final judgment for the defendants.

## II. Discussion

The plaintiffs limit their appeal to their claims under the ADA and the Rehabilitation Act; they do not seek review of the judge's ruling for the defendants on their equal-protection claim. We review a summary judgment de novo. *Pain Ctr. of Se. Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018). Summary judgment is

---

[1] Three other disabled children, by their parents, joined the suit below, but they are not involved in this appeal.

appropriate when "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

We first address a jurisdictional issue. S.B. now resides in Shorewood, so he is entitled to enroll as a resident student. We therefore dismiss as moot his claims for injunctive and declaratory relief against Shorewood. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). But his change in residence does not moot his claim for damages.

Both Title II of the ADA and section 504 of the Rehabilitation Act prohibit discrimination against disabled individuals. For our purposes the statutes are "functionally identical." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). A claim under either statute has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of his disability. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

The plaintiffs do not contend that the State Superintendent, the Department, or any of the school districts intentionally deviated from the program in a discriminatory manner. Rather, they claim that *the program itself* discriminates on the basis of disability and that the defendants are liable for their role in administering it. The question before us, then, is whether the open-enrollment program, by its terms, violates federal antidiscrimination law.

It does not. The plaintiffs argue that the program discriminates against disabled students because it imposes criteria that apply only to students with special needs. But

their argument rests on mischaracterizations of federal law and the program itself. Under federal law a program is not discriminatory just because it takes an individual's disability into account. "[A]lthough a disability is not a permissible ground for assuming an inability to function in a particular context, the disability is not thrown out when considering if the person is qualified … ." *Knapp v. Nw. Univ.*, 101 F.3d 473, 482 (7th Cir. 1996). Put another way, federal law "forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap." *Anderson*, 841 F.2d at 740.

Under the open-enrollment program, nonresident districts cannot turn away applicants merely because they are disabled. Instead the program allows nonresident districts to realistically assess whether they have the capacity and resources to comply with a transfer student's IEP. Because decisions are based on a student's special needs, the program hinges on "the actual attributes of the handicap" rather than mere "stereotypes." *Id.* It's far more limited than a true open-enrollment program. It seeks to maximize school choice but only to the extent that excess capacity exists. Any student is permitted to cross-enroll if the nonresident district has excess capacity. No student has the right to cross-enroll if the nonresident district does not.

For the program to work, school districts must evaluate their existing space and resources and the needs of the transfer applicants. Not all students are the same. A sixth grader requires different services than a fourth grader, and the program allows districts to categorize their capacity accordingly. It wouldn't follow that the program discriminates against fourth graders if a nonresident school district

only has excess capacity in the sixth grade. The same is true of students with special needs. If a student with an IEP requires special resources, it doesn't make any more sense to treat his needs as identical to those of his peers than it would to treat fourth graders the same as sixth graders.

Properly framing the program leads to an easy resolution of this case. To be a "qualified individual with a disability," a child must meet the program's "essential eligibility requirements." 42 U.S.C. § 12131(2). The program only permits applicants to transfer if the nonresident district has excess capacity. If a nonresident district lacks the capacity to serve a disabled applicant's needs, the applicant does not meet the program's essential requirements. Neither has the applicant been denied admission "by reason of [his] disability." *Id.* § 12132. As we've explained, the program considers the capacity of the nonresident district to meet the requirements outlined in the disabled student's IEP rather than the mere fact of a disability.

Even if we analyze this case as a request for an accommodation, the plaintiffs still aren't entitled to relief. Neither the ADA nor the Rehabilitation Act requires modifications that "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i); *see also Tennessee v. Lane*, 541 U.S. 509, 532 (2004). The requirement that nonresident school districts have the excess capacity to meet the needs of transferring students is a fundamental component of this program. Demanding that nonresident school districts accept students regardless of their existing capacity to meet student needs would upend this key feature. Federal law does not require such an overhaul.

AFFIRMED.